Okay. Good morning, Your Honors. I'd like to reserve three minutes for rebuttal, please. Sure. Just keep track of your own time, please. Okay. The first thing I want to point out is this case, this appeal, is not about whether a judge has a right to expect parties to comply with the judge's orders. Of course a judge has a right to do that, and it's undisputed that any judge has a right to issue orders and that they will be complied with, but that is not what this case is about. What this case is about is a judge who was unhappy with a party's settlement position during a settlement conference and announced both in chambers and openly on the record that he was going to sanction that party because the judge did not like that party's settlement position. And the next aspect of this case is that after announcing that, which resulted in $12,500 of sanctions against Allstate, the judge engaged in essentially an after-the-fact investigation to attempt to find other aspects that he could claim were noncompliance with court orders in an effort to shore up what was, I believe, clearly an improper sanctions award. Well, could I interrupt and ask? Please. If we agree with you, sort of, in other words, if we agree with you that maybe that the sanction was disproportionate, for example, or that there was some of the other factors that you're citing as improper, what do we do if we also think that there was a failure to comply with the court order? Specifically, I think you pretty well conceded that the letter doesn't really comply with what was required to be in the settlement position. We do concede that. What do we do with that? which talks about different types of remedies that are appropriate when an attorney has not complied with a court order. And there are a lot of different remedies that are available, but the drastic remedy of sanctions should only be available if there's some evidence of intentional misconduct or that an attorney has consistently failed to comply with orders. There's no question that the settlement conference statement that Allstate submitted did not comply with all of the elements that the judge required, although I disagree that it was seven out of eight, but that's really not the point. And it was late. It was late. And it was late. Is your strongest argument proportionality? I think that the strongest argument is that it didn't merit an award of sanctions. I think what would have been appropriate would have been an admonishment by the court, on the record, an open court, and that probably would have completely solved the problem. We're dealing with an attorney who has never been sanctioned in her decades-long career. Okay, but, counsel, the problem I have with that, and then I'm going to get out of your way, but the problem I have with that is it's an abuse of discretion standard, and you're really asking us to decide that we would have done it differently if your argument is that you think it didn't merit sanction. So that's a pretty slippery slope. Well, I would argue, Your Honor, that a failure to comply in the aspect that the court stated is, there's two issues here, really. The first issue is, was that really something that the court wanted to sanction the attorney for? And that issue is very important because the record is perfectly clear that after Allstate submitted its settlement conference statement, the judge spoke with the attorney before the conference. The judge had no problems with the settlement conference statement. The judge didn't ask any questions that the judge felt were necessary in order to get the information that the judge needed. They started the conference. The judge made no comment about the settlement conference statement. In chambers, when they were discussing settlement, the judge never said that. The judge first raised that issue after the judge had made a decision to sanction Allstate. And I believe that the record is fairly clear that the judge's motivation for raising a problem that he had never complained of earlier was because it was essentially wanting to punish a party and its lawyer for a settlement position that the judge disagreed with. So I don't think that sanctions are appropriate under those circumstances. In addition, I want to point out that the non-compliant – yes? I don't think. But that really gets back to the question you're asking us to almost review that part de novo. I'm going to give you a chance to think about that. But I think Judge Bennett is trying to ask a question. I'm not giving him an opportunity. If the judge had been dissatisfied with the settlement statement, which there were grounds to be in my view, it would have been easy to just send an email back because he had a couple of days saying you need to supplement it in the following ways. I didn't do that. I mean, I share your view that my reading of the record seems that these are after-the-fact justifications, particularly when he goes on a hunting expedition to find the videotape to argue about whether five or ten minutes late is a few minutes off. I agree with that. And the court scoured all the filings that had been made by the parties, as is evident at that OSC hearing, in an effort to try to find evidence that would support a sanctions award. But how do you explain? I mean, I understand the explanation about being late. Accepting it is true, the Wi-Fi problem at the hotel on Friday, sending in on Sunday from the home at I think 10, 17 at night or something. But how do you explain not disclosing your settlement position in the telephone call? I realize the judge didn't specifically ask it. The judge didn't ask it, and I think that Allstate's settlement conference statement made it pretty clear that Allstate did not believe there was any liability, there was any damages. But let me explain. I agree that there should have been compliance. But let me explain. Allstate didn't have a locked in stone settlement position. It basically had a position that we're going to go to the settlement conference because we've been ordered to. That position strikes me as very reasonable, but you've got to tell them. And the issue is the order said you've got to tell us this. So I come back to if we agree with your arguments about the chronology, there are some indications that you've alluded to that I share Judge Bennett's view of. And then there's the problem that there was a failure to comply, at least in part. Should we look at this differently? There's the proportionality question, but also I'm interested in some of the sanctions were to Allstate and some of the sanctions I think were to this individual attorney. So do you want to speak to that? I do because that's an important point because the only thing that Allstate was accused by the judge of doing was not settling or attempting to settle in good faith. That was the only thing. And of the $14,000 in sanctions, 13,000 were against Allstate. So those 13,000 were improper because they were essentially a punishment for Allstate taking a settlement position that was eminently reasonable based on the facts and circumstances of the case. So I agree that it's very important to segregate them out because Allstate did not submit an improper settlement statement. Allstate did not submit a settlement statement late. That was done by the attorney. So there is a distinction. Any indication that an Allstate representative was ordered to be there and wasn't or wasn't at the end of the phone to grant settlement authority or anything else? To the contrary, the evidence is undisputed that Allstate showed up with a representative with full authority and the judge acknowledged that the representative had full authority on the record. Anything else in the record to indicate why Allstate was separately sanctioned? That's your answer? Correct. The only act or inaction by Allstate related to a settlement position that Allstate took in the in-chambers conference. When you say full authority, do you mean full authority to dismiss and pay costs? Allstate had full authority to settle for any amount or to not settle. The representative that went to the conference had authority to negotiate, to offer money if evidence was presented that justified it. And that's what a representative, I believe, is required to do. And on the record, the representative stated during the hearing that he had full authority, and the judge, who had been present with the representative in the conference, acknowledged, I've never questioned that you have full authority. On the record, I don't really know what that means without knowing full authority to do what, up to policy limits, or what are we even talking about? That's a good question. This wasn't a policy limits case. This was after a claim had been submitted. So essentially, this was a case where they were alleging bad faith damages, to which there's no cap. That's why you say full authority. I don't really know how to interpret that. What that means is that the representative was not hamstrung by not having authority to negotiate and to offer money and to respond to offers. The representative had full authority to do whatever that representative thought was appropriate based on the information that was presented at the conference. Where is that in the record? In the hearing, when the judge sanctioned Allstate $12,500, the plaintiff's counsel kept stating that Allstate arrived with no authority. The representative stood up and said, Your Honor, I have full authority. And Magistrate Gandhi said, I know you do. I've never questioned that. That's on the transcript in the record of the first hearing at the end of the settlement conference. You're really low on time. Do you want to reserve a bit? I do. Yes, I'll reserve. Thank you. Your Honor, Your Honors, I didn't prepare an answering brief because as I stated in my letter to the court, I was submitting on the memorandum opinion and order imposing sanctions prepared by Judge Gandhi and filed as Document 46. I felt that Judge Gandhi was extremely accurate in his recitation of the facts, that his order was well thought out, and his conclusions were grounded in sound legal reasoning. And I do not feel that Judge Gandhi overreacted or acted. Where's the prejudice from Friday night to Sunday night in submitting by e-mail the defendant's settlement statement? I can't direct my attention to that, whether or not there was prejudice. I think that the judge did state in his ruling, as I recall, that that was not one of the major factors, I think. What were the major factors? Well, I think the major factors were, and I was going to get to that, I don't think any one item would have warranted the sanctions. But I think when you take all of them together, I think that is where I think. Counsel, one of them is that she was delayed by a train, right? One of them is that she was delayed by a train and it's something like 15 minutes. But I think he commented, I think he commented that that alone wouldn't warrant it. Right. It's when you take all of these items together, and that's what I was going to get to. Okay, so let's take them together. That's one of them, right? And one of them is what? So she arrived late. The brief was a couple days late. Correct. And the brief didn't have all of the factors in it that it was supposed to have. But what else is there? What do you think is sanctionable? Well, it's the numerous transgressions, basically, among other things. In the brief, it was submitted after the deadline. Their brief failed to include most of the required information. They arrived at least 15 minutes late. The other thing that they're not disclosing in their brief, you know, first of all, they didn't tell the judge. The judge was very clear. He called both counsel ahead of time, and there was no representation. We didn't know, and I don't think the court knew, that their position was that they were going to offer nothing. And the only reason this case ultimately got settled how it was was because, and I think the judge laid it out pretty clearly, was that they buried the plaintiff in discovery and everything, and she just was an 80-year-old woman that couldn't afford to go forward. But, counsel, I don't think the record is that clear on that point. The judge seemed to take umbrage at the notion that there was going to be depositions taken of her children, but they're on the witness list. Right, except what I think is the case that's, I think, very material, she misrepresented her. It was the misrepresentations, I think, that the judge was upset about, and they're not directing their attention. What are those, please? The misrepresentations, the arrival time, the amount of time after her arrival that the court commenced. But the arrival times were an estimate. I don't think she misrepresented anything with regard to arrival times. I think she failed to disclose in either her brief or in her prior conversation with Judge Gandhi that defendants were unwilling to offer anything to resolve the case. We're talking about arrival times. So in paragraph 10 of her 10-11-16 declaration, she says she arrived about 5 or 10 minutes late, checked into the courtroom, and about 5 to 8 minutes later Judge Gandhi came out on the bench and that the transcript reflects 10-18. Well, I don't think that alone. Well, let me finish. So if that's accurate, which stands, you didn't rebut that in any declaration. You didn't rebut paragraph 10. If that's accurate, she didn't make a misrepresentation, let alone a false statement. Not on that, but there were a few that were misrepresentations. Don't we have to accept this as true if it's unrebutted? I don't think so because I think the judge, in his order, and I would have laid it out the same way had I prepared a brief, I think the judge was accurate in his recitation of the facts. I think that he laid it out exactly what happened. I think that what they're doing is minimizing each element, but I think what you have to do is Well, she wasn't in the courtroom. How would he know when she walked into the courtroom if he came in after she walked in? Because it was on tape and he actually played the tape back because apparently in that court they actually have a total record and it actually shows the time at which she came in. And what he was upset about is not that she was late. It was the misrepresentation that she was late. She acted like she, in essence, got there on time or within 5 to 10 minutes. You didn't say she got there on time. Every time you're off by a couple of minutes, you think that's a misrepresentation? No. The misrepresentation was that I'm just saying what the judge, I can't speak to the judge other than the fact that what the Oh, but you can speak to the record. I can speak to the record. You're right. And the record was, I think, that she was over 15 minutes late and she didn't represent that to the court. So the court, among other things, was considering that one of the factors. She also, I mean, there's some more significant ones, I think, that aren't in the brief. She misrepresented she had reviewed plaintiff's brief before a defendant's brief was even filed. But she filed a supplemental affidavit correcting that. Well, no. No, I understand. But she had represented to the court that she had reviewed the brief when, in fact, she hadn't. All I'm doing is representing to your court that I don't think anything that Judge Gandhi said in his decision wasn't accurate. That's all I'm saying. I'm not saying. May I interrupt? I'm not saying. May I interrupt? Because your time is ticking. And I just wonder what your position is about whether we should review these two sanctions separately. Allstate was sanctioned and she was sanctioned individually. Do you want to speak to that? Because you don't have much time left. What did Allstate do that warranted sanction? I think that they didn't come in and represent to the court through their attorney. They didn't represent that they were willing to offer nothing. You keep saying offer nothing. But wasn't their position always costs? No. Unless you show us evidence of bad faith. Actually not. Actually not. My understanding, when I showed up to the conference, they were offering nothing. Then what happened is the – There's evidence of bad faith. Wasn't that – I couldn't find a place in the record where the position was nothing. The position, my recollection, your honors, and I don't think you'll find anything to the contrary, is they came to the conference offering nothing. My recollection is that on the record, or actually when the judge then approached them and talked to them and said, will you do a waiver of costs, or I assume you'll do a waiver of costs, words to that effect, then they offered a waiver of costs. Yeah, that's in a footnote in the judge's – Right, and that was my recollection because – Okay, wasn't it all contingent upon – I mean, it wasn't sort of nothing pound sand. I think it was not unless we're waiting for evidence of bad faith, and that was my understanding of the position by the defendants consistently. Is that wrong? No, but I think the only reason that we ultimately ended up dismissing the case was because we had an 80-year-old woman that just couldn't afford to go through this because they were burying us in discovery. And there actually wasn't, in my opinion, any reason to do the major discovery because the underlying case addressed a lot of these issues. But it's not your opinion. The question is whether they were really misusing discovery. And if those folks were on the witness list, it seems to me they've got a right to depose them. Nobody's saying they didn't have a right to depose them, Your Honor. I'm not saying that. I'm misunderstanding, so forgive me. All I'm saying is that if you took any of these items individually, it wouldn't warrant it. But while any one of these wouldn't have warranted it, when taken together the total of these failures clearly warranted the award of sanctions and attorney fees as awarded by the court. We showed up to the hearing in good faith, and we spent a lot of time, and the judge was taking that into consideration, I think, in preparing for the settlement conference with the understanding that we were going to maybe have a possibility of getting the case settled. And I think what the judge was most upset about is we showed up to the hearing and basically the court and us were sandbagged because all they had to do was make their position clear. They should have told the court that it's premature at that time, even when they showed up in court and made it very clear, which they really did not do. Well, it was clear enough, I guess, when the judge explained it to your client that within a couple of months she accepted the identical offer they made. Well, but she accepted the identical offer, Your Honors, only because she couldn't afford to continue with the litigation. It was not anything to do with the fact that that was a... But that wasn't the case. I would maintain to my dying day that the case had total merit. The only problem was we couldn't afford to go through with the case because of the substantial costs that were going to be incurred. There's not much cost in answering interrogatories. They had a right to propound interrogatories. Nobody said they didn't have the right to propound them. That isn't the issue. Well, you talk about you being buried. I didn't see anything that indicated your client was being buried. They were conducting routine, normal discovery. If you had a problem with the amount of discovery, there's a proportionality rule. You could have objected to it. The magistrate judge could have cut back the discovery. But, you know, to come into court and say, well, we were buried because they did routine discovery is disingenuous. But it's not really disingenuous. I would say if you... I think it is. It might even be a false statement. Well, I think that if you look at the judge's ruling, the judge laid out in his opinion why the... he laid out the discovery and he laid out the reason why we were forced to settle. It's all laid out in there. And I would have stated it the same way that the judge stated it. The judge made it very clear in his ruling. If you look, which I'm sure the court read very carefully, it's obvious. The ruling that Judge Gandhi made lays out everything. And I think it's really clear. And I think had I written a brief, it would have mirrored exactly what the judge said. Counsel, you're over your time. Okay. Thank you so much for your argument. No, I was... Yeah. Thank you. Could you put a minute back on the clock, please? Thank you. I'm going to be very quick, Your Honor. I want to... Three things. With respect to the settlement statement, the reason why I don't think sanctions are appropriate is because the judge had every opportunity to correct any problems caused by the settlement statement. Specifically, he contacted the attorney days before the settlement conference. And if he had a problem, he could have raised it then. And I think that's a mitigating factor. That's your second reason. Second point is that the late submission of the settlement brief by two days, from a Friday to a Sunday, was never raised by the judge at any point in time until the actual OSC hearing. There was no notice of that. And he raised it for the first time and surprised me at the hearing with that. And, therefore, that's not an appropriate basis. And with respect to all states, if we accept the representations of counsel, then all states came into the settlement conference saying we're offering nothing. And then at the judge's suggestion, offered a cost waiver. That is exactly what negotiation sounds like. In other words, that shows that all state was moving if we accept that representation by counsel. Finally, I just want to make one last point. Very few parties have the resources to challenge judicial conduct like this. And this happens. Judges do this sometimes. And it creates the appearance of bias, and it impacts the perception of the judiciary as being fair and impartial. And I think I would request that if the court agrees that what Judge Gandhi did was wrong, I would request that the court send some type of message to help direct other magistrate judges that you can't do this. Because how many litigants can afford to come all the way through a Ninth Circuit appeal because of this type of conduct? Usually they just put their head down and go away because it's just not worth it. And all state is one of the few litigants that have the resources and the determination to actually see this through. Thank you for your time, and I appreciate you giving me a couple extra minutes. Thank you for your argument. Thank you all. We'll take that case under submission.
judges: Fernandez, Christen, Bennett